IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID CONRAD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:19-cv-1160 |
| CSX TRANSPORTATION, INC., | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff David Conrad initiated this action on November 22, 2019, alleging that he had sustained injuries in the course of his work for the above-named Defendant, CSX Transportation, Inc. ("CSXT"). (ECF No. 1 ¶¶ 2, 9.) Plaintiff contends that these injuries are the result of Defendant's negligence and brings a claim under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, requesting damages for lost wages and medical expenses. (*Id.* ¶¶ 3, 11, 12.) Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, (ECF No. 19), arguing that "Plaintiff has failed to forecast any evidence that [it] was negligent in asking its employees to engage in routine railroad work activities," (ECF No. 20 at 6). For the reasons detailed below, Defendant's motion is denied.

**I.    BACKGROUND**

Defendant CSXT is a railroad company that employed Plaintiff as a Locomotive Engineer and Conductor for several years. (ECF No. 1 ¶¶ 1, 2.) Although the record is not

clear as to when Plaintiff was initially hired by CSXT, Plaintiff began work for Defendant as early as 2003 and left his job permanently in May of 2018. (*Id.* ¶ 4; ECF No. 20 at 1.)

Plaintiff's Complaint alleges that, while he was an employee, Defendant required him to complete several tasks in the course of his work that led to long-term and chronic injury. (ECF No. 1 ¶¶ 4, 6–7, 9–10.) Such tasks included mounting and dismounting trains while they were in motion, lifting and moving drawbars that weighed more than 700 pounds, climbing atop railcars to tie handbrakes, lifting knuckles weighing in excess of 80 pounds, and walking for long distances on uneven terrain. (*Id.* ¶¶ 4, 6–7; ECF No. 23-1 at 16.) According to Plaintiff, these tasks not only "substantially aggravated" existing injuries but also caused new injuries to Plaintiff's back, neck, shoulder, elbow, and knees. (ECF No. 1 ¶ 9.)

In making its motion for summary judgment, Defendant counters that such tasks are "fundamental railroad activities" and that Plaintiff has made only "conclusory statements that CSXT was negligent" in assigning them. (ECF No. 20 at 2, 5.) It further contends that Plaintiff has failed to provide "evidence showing what part of these work activities is unreasonably safe," and therefore a jury could only find for Plaintiff through mere speculation. (*Id.* at 5.)

In response, Plaintiff directs the Court's attention to Defendant's alteration of one of its longstanding safety rules to demonstrate that conditions were potentially unsafe. (*See generally* ECF No. 22 at 7, 9–10.) Both parties acknowledge that, when Plaintiff began his career, train workers were barred from climbing onto trains or jumping off of them while they were in motion unless there was an emergency. (*See* ECF Nos. 20 at 1–2; 22 at 7.) Further, following a change in leadership at the company in 2017, (ECF No. 22-2 at 8–10), employees

2

were subsequently allowed "to mount or dismount certain cars and locomotives as long as the employees had received proper training and followed CSXT's safety rules and protocols," (ECF No. 20 at 2).

While Defendant has described mounting and dismounting trains as "optional" under the new rule, (*id.*), Plaintiff alleges that these actions were mandatory and carry "the largest risk for a life changing event such as injury or death," (ECF No. 22 at 7). Plaintiff additionally contends that CSXT made this change without fully researching its implications, giving appropriate weight to its inherent dangers, or ensuring that all employees were trained properly on how to complete such tasks safely. (*Id.* at 12 (citing ECF No. 22-2 at 20–21); ECF No. 22-5 ¶ 5.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted). "It is axiomatic that in deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). That means that a court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569, and thus must "usually" adopt "the [nonmovant's] version of the facts" even if it seems unlikely that the plaintiff would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir.

2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). That said, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

### III. DISCUSSION

FELA provides that railroad companies engaged in interstate commerce are liable "to any person suffering injury while he is employed by such carrier" when that injury is a result of negligence "in whole or in part of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. The Supreme Court has construed this provision liberally, holding that the question for a jury is simply whether there is sufficient evidence to find that employer negligence played "even the slightest" part in producing the injury for which damages are sought. *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957). To that end, a carrier may still be found liable even when a jury finds that an employee's injury was largely due to another source, including the employee's own contributory negligence. *Id.* (citing 45 U.S.C. § 53). Additionally, the statutory language describing the employees covered, the cause of the injury, and the type of injury implicated in the claim "is as broad as could be framed." *Urie v. Thompson*, 337 U.S. 163, 181 (1949).

The fact that "FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute." *Consolidated R.R. Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). On the contrary, "[t]he basis of [an employer's] liability is his negligence, not the fact that injuries occur." *Id.* (quoting *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653 (1947)). Liability is therefore ultimately determined "under the general rule which defines negligence as the lack

4

of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances; or doing what such a person under the circumstances would not have done." *Tiller v. Atl. Coast Line R.R. Co.*, 318 U.S. 54, 67 (1943). Further, "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence." *Gallick v. Balt. & Ohio R.R. Co.*, 372 U.S. 108, 117 (1963).

Here, Plaintiff alleges that he sustained several physical injuries "mount[ing] and dismount[ing] moving railroad equipment onto rough large ballast rock," lifting and moving very heavy drawbars, "and other unsafe but required tasks" in the course of his work as a railroad employee. (ECF No. 1 ¶ 4.) Such injuries and their purported causes clearly fall under the broad framework articulated in *Urie*. Therefore, the Court must next consider whether Plaintiff has provided sufficient evidence to create a genuine dispute as to whether Defendant breached its duty of due care under the circumstances. The Court finds that Plaintiff meets his burden.

Plaintiff's Response to Defendant's Motion to Dismiss focuses primarily on whether it was safe for CSXT to allow or require its employees to mount and dismount trains while they were in motion. (*See generally* ECF No. 22.) The parties first dispute whether Plaintiff was injured in such an activity. Defendant is correct to point out that Plaintiff, in his deposition, answered "no" when asked whether he had ever been injured "getting on or off a moving train." (ECF No. 23 at 3 (citing ECF No. 23-1 at 12–13, 34, 43).) That said, within the context of the testimony, it appears clear that Plaintiff was acknowledging that he had never experienced an injury that was immediately apparent and was not referring to type of the long-term injuries at issue in this case. Indeed, Plaintiff goes on to discuss throughout the remainder

5

of his deposition that this particular activity, over a period of time, contributed to his chronic pain. (*See, e.g.*, ECF No. 23-1 at 35, 37, 38.) Following his deposition, Plaintiff also submitted a declaration stating that "getting on and off moving equipment . . . as required was a jarring experience to my body." (ECF No. 22-5 ¶ 13.)

With regards to whether the activity was dangerous, Plaintiff has presented testimony from Matthew Meadows, CSXT's Senior Director of Safety, to show that Defendant had previously banned such actions through a safety rule. (*See* ECF No. 22-2 at 7 ("Up until March the 14th of 2017, yes, except in cases of emergency, it would have been prohibited to get on and off moving equipment.").) Mr. Meadows also stated in his deposition that, when CSXT altered this rule, it considered "how would we want it done at CSX that provided the most safety and the safest practices to do it," thereby acknowledging that such a change was foreseeably dangerous without the proper safeguards in place. (*Id.* at 9.)[1] The new rules were considered important enough that even Mr. Meadows, who did not work on railroad equipment regularly, was trained on how to properly mount and dismount trains and was required to demonstrate his proficiency. (*Id.* at 6.)

Plaintiff acknowledged that he did receive some training on how to comply with this new rule, and he was even able to describe a specific technique for doing so in his deposition. (*See* ECF No. 23-1 at 34.) However, he has also submitted a declaration stating that he was not trained in the same way or to the same extent as his colleagues, (ECF No. 22-5 ¶ 5), and Mr. Meadows acknowledged that he had no documentation that Plaintiff had been trained or

---

[1] Mr. Meadows also referenced a rail company that had previously allowed its employees to mount and dismount moving railroad equipment but had ended the practice. (ECF No. 22-2 at 23.) This could lead a factfinder to conclude that at least some in the railroad industry might reasonably find that the inherent dangers in this practice outweighed the efficiencies gained.

6

refreshed in this technique at CSXT's Railroad Education Development Institute, (ECF No. 22-2 at 16–17).

A failure to train an employee properly has been found to be sufficient for a verdict in favor of an employee-plaintiff. *See CSX Transp., Inc. v. McBride*, 564 U.S. 685, 689 (2011) (affirming a jury verdict for a locomotive engineer when the railroad employer had "failed to train [plaintiff] to operate [switching] equipment"). While Defendant here contends that Plaintiff has not "identified any witness [other than himself] who could establish that this allegedly less detailed training made this optional activity [of mounting and dismounting the train] unreasonably unsafe," (ECF No. 23 at 4), this argument ignores the fact that the company itself prohibited the activity for several years under its safety regulations. Further, it is not for the Court at this stage to judge the credibility of Plaintiff's own statements but rather merely to assess whether there is a genuine dispute between the parties. To that end, the Court finds that there is a genuine dispute as to whether Plaintiff was properly trained in this technique in order to perform it safely, and thus a reasonable jury could find that a lack of training contributed "even the slightest" part in producing the injuries Plaintiff describes. Accordingly, the Court denies Defendant's Motion for Summary Judgment.

## ORDER

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is DENIED.

This, the 4th day of June 2021.

/s/ Loretta C. Biggs
United States District Judge